

FILED
DEC 19 2013
U.S. COURT OF
FEDERAL CLAIMS

Guy A. Randles
Stoel Rives LLP
900 SW Fifth Avenue, Suite 2600
Portland, OR 97204
503-294-9298
garandles@stoel.com

Attorneys for Plaintiff

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

THE ROSEN LAW FIRM, P.C., an Oregon
Professional Corporation,

    Plaintiff,

v.

THE UNITED STATES, acting by and
through General Services Administration,

    Defendant.

No. 13-1006C

**COMPLAINT**

## JURISDICTION

1. Jurisdiction is conferred on this Court by 28 USC § 1491(a)(1) and (2). This Complaint is based upon a contract with the United States of America.

## PARTIES

2. Plaintiff The Rosen Law Firm, P.C. ("Law Firm") is a professional corporation organized under the laws of the State of Oregon. Law Firm, whose principal place of business is in Oregon, is a law firm that provides legal services. Law Firm is a former tenant of the United States, having leased office and storage space in the Gus Solomon U.S. Courthouse, 620 SW Main Street, Portland, OR 97205 ("Courthouse").

3. Defendant is the United States of America acting by and through General Services Administration ("GSA").

## STATEMENT OF FACTS

4. On or about March 2, 2006, Law Firm entered into Contract No. GS-10PTE-OL-6-28 ("Contract") with GSA to lease office space on the sixth and seventh floors of the Courthouse. The Contract was amended by a Supplemental Lease Agreement dated February 17, 2009, which, in part, extended Law Firm's occupancy through February 29, 2012.

5. In or about 2010, GSA had work performed at the Courthouse, including the Roof & Parapet/Cornice Repair/Replacement Project and other services ("Project").

6. Part of the Project's work was to reroof the Courthouse building, check its drainage system, otherwise protect the building and its tenantable space, and install a solar panel system on the roof.

7. The reroofing and related work had been scheduled to be completed during the summer of 2010.

8. As of October 10, 2010 the reroofing of the Courthouse was only partially complete, with tarps and other temporary coverings in certain places and nothing covering the roof in other places.

9. The 7th floor of the Courthouse is the top floor of tenantable space in the Courthouse. The Project included work that was directly above the space leased by the Law Firm.

10. In 2010, the Law Firm employed four full time employees, which consisted of two attorneys, a legal assistant, and a legal secretary and, from time to time, temporary and part-time employees and others. Steven O. Rosen ("Mr. Rosen") is an attorney who is the sole owner of the Law Firm and is the President of the Professional Corporation, the firm's corporate entity.

11. Water leaks from the roof, drains, and other places unknown to the Law Firm began entering the Law Firm's space from its ceiling beginning in approximately September of 2010, making portions of the leased space unusable and interrupting the work of the Law Firm.

12. The Law Firm reported these water leaks to GSA.

13. On and about October 10, 2010, there were winds and rain in and around Portland, Oregon, including at and around the Courthouse.

14. On Sunday, October 10, 2010, Mr. Rosen went to the Law Firm's leased office space in the Courthouse to work and found flooding in the office space. Water was pouring nonstop into the office space from multiple places in the ceiling; portions of the ceiling had fallen and were falling onto furniture, equipment, and the floor; walls and bookshelves were wet, and ceiling fluorescent light fixtures were filled or were filling with water and falling into an open position, dumping additional water in the office space.

15. Upon discovering the flooding, Mr. Rosen called GSA, and GSA Assistant Property Manager, James Carter ("Carter"), came to the Courthouse on October 10, 2010.

16. Water and unknown substances leaked, dripped, and poured into and flooded the office space rented by the Law Firm and portions of the ceiling collapsed.

17. The water, fallen ceiling tiles, and debris damaged and ruined furniture, computer equipment, papers, books, and other property of the Law Firm and of employees of the Law Firm.

18. The office space was unusable because the carpet was soaked, walls were wet, electricity was cut off into the office suite, portions of the ceiling had collapsed, and the office space had to be evacuated in order to begin remediation and repairs.

19. As the result of the risk of electrocution, fire, sparking, and other risks, GSA instructed that electricity be cut off into most of the Law Firm's office suite. Electricity remained disconnected during the remainder of the Law Firm's occupancy in the Courthouse.

20. Mr. Rosen was given permission by Carter to ask ServiceMaster Clean ("ServiceMaster"), a disaster restoration service, to come to the Courthouse on October 10 and to conduct damage control and other services, including draining water from the office suite and moving property out of the Law Firm's office space.

21. In order to permit GSA to begin remediation work, preserve property, resume the business of the Law Firm, and to permit draining, drying, clean up, assessment of the physical damage, and then repair, most of the Law Firm's furniture, property, computers, books, and other items, as well as books of the federal government, were moved into a former courtroom that was next to the Law Firm's leased office suite. Computer wiring and telephone wiring were strung into the courtroom to permit the business of the Law Firm to resume.

22. Because there was extensive dust and particles in the air, employees of the Law Firm wore dust masks in the office suite and adjoining courtroom.

23. The legal assistant of the Law Firm was seriously injured and missed work after she tripped over a hose, cable, or other equipment that was laid down on the floor by ServiceMaster to drain water from the office suite and dry out the rooms.

24. The legal secretary of the Law Firm had an allergic or other reaction to dust, particles, chemicals, and other substances that were present as a result of the water leaks and flooding and she missed work.

25. As a result of odors, dust, particles, chemicals, and other substances that were present employees of the Law Firm experienced dry and stinging eyes and dry or irritated throats and missed work because of this.

26. The Law Firm paid these injured employees their regular salaries and they were given time off with their regular pay even though they missed their regularly-scheduled work hours.

27. Substantial time was devoted by all employees to tasks that were necessary as a result of the flooding and damage.

28. Working and conducting the regular business of the Law Firm in the adjacent courtroom was very difficult and was interrupted by the noise of drainage motors, dehumidification machines and blowers, fans, odors, construction noise, unacceptable air quality, the open nature of the courtroom, meetings with GSA personnel and contractors, and the need to find alternate suitable space from which to conduct the Law Firm's business.

29. A portion of the Law Firm's leased space that was across the hall from the main portion of the office suite had no direct water damage in the October 10, 2010 flooding; however that space was affected by odors, noise, and particulates in the air, and required air filtration equipment to be used. These conditions and hazardous and poor environmental quality made it difficult to use that space for Law Firm work.

30. The Law Firm was forced to relocate because repairs to the office suite were expected to take at least months to complete with an unknown date of completion; as the result of odors and unacceptable air and environmental quality, and health hazards; as the result of concerns for the safety and health of employees; and as the result of demonstrated inadequacy of

construction personnel as illustrated by repeated leaks, flooding, and a pipe falling through the ceiling of the 7th floor during normal working hours. The Law Firm began moving on October 25, 2010 to a temporary location, 1330 SW Third Avenue, Apartment 410, Portland, Oregon 97201.

31. At some time after October 25, 2010, GSA advised the Law Firm that the Law Firm should not count on being able to move back into its leased office space.

32. The Law Firm located and secured office space to lease and move to, and on November 14, 2011, the Law Firm began to operate its law firm business out of its current location at Suite 1220, 1000 SW Broadway in Portland.

33. The Law Firm submitted a written demand to GSA Contracting Officer Lorraine Parham dated October 29, 2010 seeking acknowledgement of GSA's responsibility for Law Firm's damages.

34. In response to the Law Firm's letter dated October 29, 2010, Contracting Officer Parham sent a letter dated November 9, 2010 instructing Law Firm to exhaust administrative remedies regarding the Contract by submitting a demand with a proposed amount and documentation.

35. The lease Contract was amended in December of 2010 to terminate occupancy of the rooms on the 7th floor of the Courthouse and to provide for storage space elsewhere in the building, and the amended Contract for storage space was terminated in its entirety effective April 2, 1012.

36. Law Firm submitted a written notice and demand dated October 5, 2012 to GSA Contracting Officer Lorraine Parham for claims pursuant to its Contract with GSA and requested

payment of a sum certain.

37. On December 20, 2012, Law Firm received a letter from Contracting Officer Parham denying Law Firm's contract claims outlined in Law Firm's October 5, 2012 letter.

38. Law Firm submitted to GSA a properly certified claim dated October 18, 2013 in accordance with the Contract Disputes Act, contending that Law Firm was entitled to recover its claim amount on theories among others of breach of contract to provide the leased space in good repair and tenantable condition and breach of the covenant of quiet enjoyment.

39. On or about November 12, 2013, Stanley Catchpole, Contracting Officer, sent a letter to Law Firm stating that the Contract Disputes Act does not apply and therefore a contracting officer's final decision will not be issued. If a Contracting Officer's decision is required, said action constitutes a deemed denial.

40. At all times relevant herein, Law Firm fulfilled all of its obligations under the Contract and the Contract Disputes Act.

FIRST CLAIM FOR RELIEF
(BREACH OF CONTRACT – TENANTABLE CONDITION)

41. Rosen Law Firm incorporates paragraphs 1 – 40.

42. The Contract provides, in Term and Condition C, that GSA "shall . . . maintain in good repair and tenantable condition the demised premises, including the building and any and all equipment, fixtures, and appurtenances."

43. GSA breached Term and Condition C of the Contract.

44. As a result of the breach of contract and the leaking and flooding, the Law Firm suffered damages, including:

a. the fees and expenses invoiced by ServiceMaster, which included fees and expenses for draining water, dehumidifying the air, moving property from the flooded areas, clean-up, abatement, carpet removal and investigation for mold;

b. purchase of air cleaners and dust masks;

c. expenses of two moves, including wiring and installation expenses that resulted from each move, City of Portland parking permits for moving trucks, moving announcements and postage for those announcements; stationary, and business cards with the new address;

d. interruption of its business;

e. lost revenue, including loss of revenue that would have been generated by billing on an hourly basis;

f. the salaries of employees for time when their usual law firm work was interrupted, the firm was moving, overtime as a result of the flooding or moves, sickness, injuries and closure of the Law Firm;

g. lease payments for its office suite in the Courthouse after the flooding began; and

h. increased rent, storage, and other expenses in excess of lease and rental expenses at the Courthouse.

45. The monetary damages suffered by the Law Firm, not including property damage, total $210,939.91.

## SECOND CLAIM FOR RELIEF
### (BREACH OF CONTRACT – COVENANT OF QUIET ENJOYMENT)

46. Rosen Law Firm incorporates paragraphs 1 – 40.

47. The Contract provides that GSA "shall furnish the Lessee under the terms of this lease . . . utilities as follows: Utilities as currently in place and operable. Utilities for normal business are provided for an eleven (11) hour day, five (5) days a week. . . ."

48. The Contract implies a covenant of quiet enjoyment.

49. Law Firm had neither electricity nor quiet and peaceful possession of the leased premises free of disturbance by others due to the leaking and flooding.

50. GSA breached paragraph 5 of the Contract and breached the implied covenant of quiet enjoyment.

51. As a result of the breach of contract and the leaking and flooding, the Law Firm suffered damages, including:

   a. the fees and expenses invoiced by ServiceMaster, which included fees and expenses for draining water, dehumidifying the air, moving property from the flooded areas, clean-up, abatement, carpet removal and investigation for mold;

   b. purchase of air cleaners and dust masks;

   c. expenses of two moves, including wiring and installation expenses that resulted from each move, City of Portland parking permits for moving trucks, moving announcements and postage for those announcements; stationary, and business cards with the new address;

   d. interruption of its business;

   e. lost revenue, including loss of revenue that would have been generated by billing on an hourly basis;

    f. the salaries of employees for time when their usual law firm work was interrupted, the firm was moving, overtime as a result of the flooding or moves, sickness, injuries and closure of the Law Firm;

    g. lease payments for its office suite in the Courthouse after the flooding began; and

    h. increased rent, storage, and other expenses in excess of lease and rental expenses at the Courthouse.

52. The monetary damages suffered by the Law Firm, not including property damage, total $210,939.91.

### PRAYER

The Rosen Law Firm, P.C. seeks:

1. Damages in the amount of $210,939.91 plus interest;

2. Attorney's fees and costs as permitted by statute and rules; and

3. Such other relief as is permitted.

DATED this ____18th____ day of December, 2013.

                            STOEL RIVES LLP

                            _____
                            Guy A. Randles
                            Attorneys for Plaintiff
                            The Rosen Law Firm, P.C.

Counsel of Record:

Guy A. Randles
Stoel Rives LLP
900 SW Fifth Avenue, Suite 2600
Portland, OR 97204-1268
Telephone: (503) 294-9298
Facsimile: (503) 220-2480
Email: garandles@stoel